**In the Matter of the ESTATE OF Allan Hamilton WAGLEY, deceased.**

No. 870257.

Supreme Court of Utah.

Aug. 23, 1988.

Daniel L. Wilson, Ogden, for Susan Wagley.

Michael L. Deamer, Salt Lake City, for Sharon Beers.

PER CURIAM:

Susan Wagley, the personal representative and widow of the decedent, Allan Hamilton Wagley, appeals from an order of the probate court awarding certain personal property to the estate and denying her claim for exempt property by invasion of multiple-party accounts in the name of decedent's surviving daughter. We affirm in part and reverse in part.

Susan and Allan Hamilton Wagley were married on November 25, 1985. On November 20, Mr. Wagley purchased a refrigerator, a bedroom set, and two chairs at a cost of $2,558. Prior to his marriage to Susan, Wagley also established joint accounts with his daughter, Sharon Beers, the appellee in this case. The accounts consisted of approximately $18,000, all contributed by Mr. Wagley and constituting virtually his entire estate. Mr. Wagley died five days after his marriage to Susan Wagley.

Appellant was appointed personal representative of the estate. The assets found in the estate proved to be insufficient to pay the debts and administrative expenses incurred in settling the estate. Appellant petitioned the court for exempt property and family allowances. The court permitted invasion of the multiple-party accounts, which had devolved upon Mrs. Beers, for the payment of burial expenses, costs of administration, and family allowance. The court disallowed appellant's claim for exempt property brought pursuant to section 75–2–402 of the Utah Uniform Probate Code (UUPC). Appellant also claimed the furniture as joint owner, but the court ruled that it belonged to the estate and appraised its value at the purchase price. Appellant had miscellaneous personal property appraised at $85, but the court ordered a second appraisal which raised the value to $135.

The amended inventory filed by appellant shows the net value of the estate, including cash, personal property valued at $135, and furniture valued at $2,558, to be $4,441.78. Expenses of the administration of the estate, including disbursements, payments made and subject to reimbursement, unpaid bills, and administration fees total $7,314.93, for a total of $2,873.15 expenses exceeding assets available in the estate. The probate court ruled that "to the extent there is value in the estate the widow is entitled to a claim of exempt property up to $3,500, [but] only to the value of the property in the estate."

Appellant challenges the probate court's denial of exempt property allowance from multiple-party accounts, the award of the furniture to the estate, its valuation at full cost of purchase price, the higher valuation of personal property where no objections were filed to the initial evaluation, the refusal to let her administer funds obtained from the multiple-party accounts, and the failure of the court to award interest on amounts ordered paid to appellant. We address those issues to the extent necessary to the resolution of the issues.

*Exempt Property*

■ Under the provisions of the UUPC, the devolution of a person's estate upon his or her death is subject to the restrictions set out in the Code. Specifically, section 75–3–101 provides: "The power of a person to leave property by will and the rights of creditors, devisees, and heirs to his property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates." That section further provides that upon death, a person's personal and real property devolves on persons named in a will or on intestate heirs "subject to homestead allowance, exempt property and family allowance, rights of creditors, elective share of the surviving spouse, and administration."

The exempt property statute, Utah Code Ann. § 75–2–402 (1978), reads as follows:

In addition to the homestead allowance, the surviving spouse of a decedent who was domiciled in this state is entitled from the estate to value not exceeding $3,500 in excess of any security interests therein in household furniture, automobiles, furnishings, appliances, and personal effects.... [I]f there is not $3,500 worth of exempt property in the estate, the spouse or children are entitled to other assets of the estate, if any, to the

extent necessary to make up the $3,500 value. Rights to exempt property and assets needed to make up a deficiency of exempt property have priority over all claims against the estate, except reasonable funeral expenses, and the right to any assets to make up a deficiency of exempt properties shall abate as necessary to permit prior payment of the reasonable funeral expenses, homestead allowance, and family allowance. These rights are in addition to any benefit or share passing to the surviving spouse or children by the will of the decedent unless otherwise provided, by intestate succession, or by way of elective share.

■ "The purpose of the allowances is to ensure that a surviving spouse is not left penniless and abandoned by the death of a spouse. The allowances are not designed to support the family until they share in the estate, but irrespective of whether they do or do not share." *In re Estate of Lawson*, 721 P.2d 760, 762 (Mont.1986). The family protection provisions of the Uniform Probate Code were intended by the drafters to protect a surviving spouse from disinheritance by a decedent, and the surviving spouse's right to exempt property is absolute. *In re Estate of Dunlap*, 199 Mont. 488, 649 P.2d 1303, 1305 (1982); *In re Estate of Merkel*, 618 P.2d 872 (Mont. 1980).

■ The language of section 75–2–402 is clear in giving the exempt property claim priority over all claims against the estate, except reasonable funeral expenses, homestead allowance, and family allowance. In the case before us, the decedent left no real estate, and no homestead exemption was therefore claimed. The payment of funeral expenses and family allowance totaled $6,041.09, leaving a net negative balance in the estate of $1,599.31 and therefore no assets from which the widow could claim her exempt property.

## Invasion of Multiple–Party Accounts

■ Having decided that the widow's right to exempt property is absolute and that the estate of Mr. Wagley was insolvent, we next consider whether the probate court correctly denied an invasion of the multiple-party accounts in order to satisfy the claim or whether the allowance is mandated by the statute, leaving the court no discretion to deny the claim. Again, the UUPC is unambiguous. Section 75–6–107 provides in pertinent part:

No multiple-party account will be effective against an estate of a deceased party to transfer to a survivor sums needed to pay debts, taxes, and expenses of administration, including statutory allowances to the surviving spouse, minor children and dependent children, if other assets of the estate are insufficient. A surviving party, P.O.D. payee, or beneficiary who receives payment from a multiple-party account after the death of a deceased party shall be liable to account to his personal representative for amounts the decedent owned beneficially immediately before his death to the extent necessary to discharge the claims and charges mentioned above remaining unpaid after application of the decedent's estate.

The editorial board comment further clarifies why the remedy of this section was needed and what claims are encompassed by "statutory allowances."

The sections of this chapter authorize transfers at death which reduce the estate to which the surviving spouse, creditors and minor children normally must look for protection against a decedent's gifts by will. Accordingly, it seemed desirable to provide a remedy to these classes of persons which should assure them that multiple-party accounts cannot be used to reduce the essential protection they would be entitled to if such accounts were deemed a special form of specific device. Under this section a surviving spouse is automatically assured of some protection against a multiple-party account if the probate estate is insolvent; rights are limited, however, to sums needed for statutory allowances. The phrase "statutory allowances" includes the homestead allowance under section 75–2–401, the family allowance under section 75–2–403, and any allowance

needed to make up the deficiency in exempt property under section 75–2–402. See also *Simmons v. Ewing,* 96 Idaho 380, 529 P.2d 776 (1974), where the Supreme Court of Idaho affirmed the probate court's award of exempt property allowance from separate property as the only available source for funds for the allowance.

Based on the above, we hold that it was error for the probate court to deny the widow her exempt property claim from the multiple-party accounts in the name of the decedent's daughter where the estate was insufficient to satisfy the claim.

*Value and Award of Personal Property*

■ The personal representative is required, under section 75–3–705, to "prepare an inventory of property owned by the decedent at the time of his death, listing it with reasonable detail, and indicating as to each listed item, its fair market value *as of the date of the decedent's death.*" (Emphasis added.) The probate court admitted into evidence exhibits of checks written by the decedent to the furniture company for the furniture bought and listed its fair market value as the purchase price ten days prior to Mr. Wagley's death. The evidence is uncontroverted that the couple bought and used the furniture during their short marriage and that it could not have been returned as new on the date of Mr. Wagley's death. It was therefore error for the probate court to appraise the furniture at the purchase price, and upon remand, appellant should employ a qualified and disinterested appraiser to assist her in ascertaining the fair market value of the furniture on the date of Mr. Wagley's death. *See* § 75–3–706.

■ Appellant had miscellaneous personal property appraised at $85 which the probate court rejected and for which it required a second appraisal to be undertaken by the court's own appraiser. The probate court clearly exceeded its authority under the UUPC, which gives that authority to the personal representative. *See* § 75–3–706; *see also* editorial board comment to § 75–3–705 ("This and the following sections eliminate the practice now required by many probate statutes under which the judge is involved in the selection of appraisers."). No objections were raised by the heirs of Mr. Wagley to the appraiser's appraisal of the miscellaneous personal property, and no breach of duty on the part of the personal representative was alleged. The probate court therefore had no statutory basis upon which to reject her appraisal.

■ Appellant also claims that the furniture purchased in contemplation of marriage should have been awarded to her outright and not made part of the estate of the decedent. The probate court found that appellant's intestate share as omitted spouse under a will executed by Mr. Wagley during his first marriage was one-half of the decedent's estate. § 75–2–102(d). Absent a testamentary disposition to the contrary, the probate court properly found that the furniture became part of the decedent's estate. The question of ownership here was a question of fact on which this Court defers to the probate court absent clear error. Utah R.Civ.P. 52(a); *Lemon v. Coates,* 735 P.2d 58 (Utah 1987).

*Administration of Multiple–Party Accounts*

Appellant also contends that funds obtained from the multiple-party accounts for payment of claims against the estate should have been administered by her as part of the estate. However, she also concedes that neither she nor the estate suffered any monetary losses as a result and merely states that the court's failure to enforce the provisions of section 75–6–107 had the *potential* of damaging her credit and reputation. A potential claim is an issue we choose not to reach.

■ Last, appellant claims that amounts ordered to be paid to her from the multiple-party accounts should have included an award of interest. She does not base that claim on statutory provisions, but strictly on a theory of quantum meruit. Although principles of law and equity supplement the provisions of the UUPC unless displaced by particular provisions of the Code, § 75–1–103, that theory is unavail-

able to appellant under the facts of this case. Mrs. Beers paid amounts owing by the estate from funds in the multiple-party accounts owned by her after Wagley's death. She therefore was not unduly enriched at the expense of appellant, whose only claim to the funds arose under statute. Mrs. Beers did not retain money or benefits that in justice and equity belonged to appellant. *See generally Berrett v. Stevens,* 690 P.2d 553, 557 (Utah 1984).

The trial court's award of the furniture to the estate is affirmed. The trial court's appraisal of the furniture and miscellaneous personal property is vacated and appellant is instructed to obtain an independent appraisal on the furniture and to list the original appraisal of $85 for the miscellaneous personal property. The case is remanded for an award of exempt property to make up the deficiency between the appraised value of the personal property and the ceiling of $3,500 allowed under section 75-2-402. The amount is to be paid from the multiple-party accounts.

•   •   •   •   •

HOWE, Associate C.J., having disqualified himself, does not participate herein.