No. 00-235

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 359

303 Mont. 335

15 P.3d 931

IN RE THE ESTATE OF

CHARLES KURALT, Deceased.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

Honorable John Christensen, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Keith Strong and John Kutzman, Dorsey & Whitney LLP, Great

Falls, Montana

Todd R. Hillier, Schraudner & Hillier, Bozeman, Montana

William S. Dockins, Attorney at Law, Bozeman, Montana

For Respondent:

Jame H. Goetz, Goetz, Hallik, Baldwin & Dolan, Bozeman, Montana

Submitted on Briefs: October 26, 2000
Decided: December 27, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Patricia Elizabeth Shannon, longtime personal companion of the deceased, Charles Kuralt, challenged the testamentary disposition of Kuralt's real and personal property in the District Court for the Fifth Judicial District in Madison County. The District Court initially granted partial summary judgment in favor of the Estate and Shannon appealed. This Court reversed the District Court and remanded for a determination of disputed issues of material fact. Following an evidentiary hearing, the District Court found that Kuralt executed a valid holographic codicil which expressed his testamentary intent to transfer the Madison County property to Shannon. The Estate now appeals from the order and judgment of the District Court. We affirm the District Court's order and judgment.

¶2 The parties present issues on appeal which we restate as follows:

¶3 1. Did the District Court err when it found that the June 18, 1997 letter expressed a present testamentary intent to transfer property in Madison County?

¶4 2. Did the District Court err when it held that the letter was a codicil without affording the parties an opportunity to be heard on that issue?

## FACTUAL BACKGROUND

¶5 Most of the relevant facts were previously before this Court. *See In re Estate of Kuralt (Kuralt I)*, 1999 MT 111, 294 Mont. 354, 981 P.2d 771. To summarize, Charles Kuralt and Elizabeth Shannon maintained a longterm and intimate personal relationship. Kuralt and Patricia Shannon desired to keep their relationship secret, and were so successful in doing so that even though Kuralt's wife, Petie, knew that Kuralt owned property in Montana, she was unaware, prior to Kuralt's untimely death, of his relationship with Shannon.

¶6 Over the nearly 30-year course of their relationship, Kuralt and Shannon saw each other regularly and maintained contact by phone and mail. Kuralt was the primary source

of financial support for Shannon and established close, personal relationships with Shannon's three children. Kuralt provided financial support for a joint business venture managed by Shannon and transferred a home in Ireland to Shannon as a gift.

¶7 In 1985, Kuralt purchased a 20-acre parcel of property along the Big Hole River in Madison County, near Twin Bridges, Montana. Kuralt and Shannon constructed a cabin on this 20-acre parcel. In 1987, Kuralt purchased two additional parcels along the Big Hole which adjoined the original 20-acre parcel. These two additional parcels, one upstream and one downstream of the cabin, created a parcel of approximately 90 acres and are the primary subject of this appeal.

¶8 On May 3, 1989, Kuralt executed a holographic will which stated as follows:

> May 3, 1989
>
> In the event of my death, I bequeath to Patricia Elizabeth Shannon all my interest in land, buildings, furnishings and personal belongings on Burma Road, Twin Bridges, Montana.
>
> Charles Kuralt
>
> 34 Bank St.
>
> New York, NY 10014

¶9 Although Kuralt mailed a copy of this holographic will to Shannon, he subsequently executed a formal will on May 4, 1994, in New York City. This Last Will and Testament, prepared with the assistance of counsel, does not specifically mention any of the real property owned by Kuralt. The beneficiaries of Kuralt's Last Will and Testament were his wife, Petie, and the Kuralts' two children. Neither Shannon nor her children are named as beneficiaries in Kuralt's formal will. Shannon had no knowledge of the formal will until the commencement of these proceedings.

¶10 On April 9, 1997, Kuralt deeded his interest in the original 20-acre parcel with the cabin to Shannon. The transaction was disguised as a sale. However, Kuralt supplied the "purchase" price for the 20-acre parcel to Shannon prior to the transfer. After the deed to

the 20-acre parcel was filed, Shannon sent Kuralt, at his request, a blank buy-sell real estate form so that the remaining 90 acres along the Big Hole could be conveyed to Shannon in a similar manner. Apparently, it was again Kuralt's intention to provide the purchase price. The second transaction was to take place in September 1997 when Shannon, her son, and Kuralt agreed to meet at the Montana cabin.

¶11 Kuralt, however, became suddenly ill and entered a New York hospital on June 18, 1997. On that same date, Kuralt wrote the letter to Shannon which is now at the center of the current dispute:

June 18, 1997

Dear Pat-

Something is terribly wrong with me and they can't figure out what. After cat-scans and a variety of cardiograms, they agree it's not lung cancer or heart trouble or blood clot. So they're putting me in the hospital today to concentrate on infectious diseases. I am getting worse, barely able to get out of bed, but still have high hopes for recovery ... if only I can get a diagnosis! Curiouser and curiouser! I'll keep you informed. I'll have the lawyer visit the hospital to be sure you <u>inherit</u> the rest of the place in MT. if it comes to that.

I send love to you & [your youngest daughter,] Shannon. Hope things are better there!

Love,

C.

¶12 Enclosed with this letter were two checks made payable to Shannon, one for $8000 and the other for $9000. Kuralt did not seek the assistance of an attorney to devise the remaining 90 acres of Big Hole land to Shannon. Therefore, when Kuralt died unexpectedly, Shannon sought to probate the letter of June 18, 1997, as a valid holographic codicil to Kuralt's formal 1994 will.

¶13 The Estate opposed Shannon's Petition for Ancillary Probate based on its contention that the June 18, 1997 letter expressed only a future intent to make a will. The District Court granted partial summary judgment for the Estate on May 26, 1998. Shannon

appealed from the District Court order which granted partial summary judgment to the Estate. This Court, in *Kuralt I*, reversed the District Court and remanded the case for trial in order to resolve disputed issues of material fact. Following an abbreviated evidentiary hearing, the District Court issued its Findings and Order. The District Court held that the June 18, 1997 letter was a valid holographic codicil to Kuralt's formal will of May 4, 1994 and accordingly entered judgment in favor of Shannon. The Estate now appeals from that order and judgment.

## STANDARD OF REVIEW

¶14 The standard of review of a district court's findings of fact is whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Norwood v. Service Distrib., Inc.*, 2000 MT 4, ¶ 21, 297 Mont. 473, ¶ 21, 994 P.2d 25, ¶ 21. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

## ISSUE 1

¶15 Did the District Court err when it found that the June 18, 1997 letter expressed a present testamentary intent to transfer property in Madison County?

¶16 The Estate contends that the District Court made legal errors which led to a mistaken conclusion about Kuralt's intent concerning the disposition of his Montana property. The Estate argues that the District Court failed to recognize the legal effect of the 1994 will and therefore erroneously found that Kuralt, after his May 3, 1989 holographic will, had an uninterrupted intent to transfer the Montana property to Shannon. The Estate further argues that Kuralt's 1994 formal will revoked all prior wills, both expressly and by inconsistency. This manifest change of intention, according to the Estate, should have led the District Court to the conclusion that Kuralt did not intend to transfer the Montana property to Shannon upon his death.

¶17 Montana courts are guided by the bedrock principle of honoring the intent of the testator. *See e.g., In re Estate of Irvine* (1943), 114 Mont. 577, 139 P.2d 489; *In re Estate of Van Voast* (1953), 127 Mont. 450, 266 P.2d 377; *In re Estate of Ramirez* (1994), 264 Mont. 33, 869 P.2d 263. On remand, the District Court resolved the factual question of whether Kuralt intended the letter of June 18, 1997 to effect a testamentary disposition of the Montana property. As we stated in *Kuralt I*, the "question of whether that letter contains the necessary animus testandi becomes an issue suitable for resolution by the trier of fact." *Kuralt I*, ¶ 39. The argument on appeal, while clothed as a legal argument, addresses factual findings made by the District Court. However, if the factual findings of the District Court are supported by substantial credible evidence and are not otherwise clearly erroneous, they will not be reversed by this Court.

¶18 The record supports the District Court's finding that the June 18, 1997 letter expressed Kuralt's intent to effect a posthumous transfer of his Montana property to Shannon. Kuralt and Shannon enjoyed a long, close personal relationship which continued up to the last letter Kuralt wrote Shannon on June 18, 1997, in which he enclosed checks to her in the amounts of $8000 and $9000. Likewise, Kuralt and Shannon's children had a long, family-like relationship which included significant financial support.

¶19 The District Court focused on the last few months of Kuralt's life to find that the letter demonstrated his testamentary intent. The conveyance of the 20-acre parcel for no real consideration and extrinsic evidence that Kuralt intended to convey the remainder of the Montana property to Shannon in a similar fashion provides substantial factual support for the District Court's determination that Kuralt intended that Shannon have the rest of the Montana property.

¶20 The June 18, 1997 letter expressed Kuralt's desire that Shannon inherit the remainder of the Montana property. That Kuralt wrote the letter *in extremis* is supported by the fact that he died two weeks later. Although Kuralt intended to transfer the remaining land to Shannon, he was reluctant to consult a lawyer to formalize his intent because he wanted to keep their relationship secret. Finally, the use of the term "inherit" underlined by Kuralt reflected his intention to make a posthumous disposition of the property. Therefore, the District Court's findings are supported by substantial evidence and are not clearly erroneous. Accordingly, we conclude that the District Court did not err when it found that the letter dated June 18, 1997 expressed a present testamentary intent to transfer property in Madison County to Patricia Shannon.

## ISSUE 2

¶21 Did the District Court err when it held that the letter was a codicil without affording the parties an opportunity to be heard on that issue?

¶22 The Estate contends that the District Court erred when it held that the June 18, 1997 letter was a valid codicil, because by definition a codicil must refer to a previous will or must itself be a valid will. Because the District Court held that the June 18, 1997 letter was a codicil without analyzing how the letter affected the provisions of the 1994 will, the Estate contends that the District Court erred and that it improperly deprived the parties of a chance to be heard on this issue.

¶23 However, we agree with the District Court's conclusion that the June 18, 1997 holograph was a codicil to Kuralt's 1994 formal will. Admittedly, the June 18, 1997 letter met the threshold requirements for a valid holographic will. *Kuralt I*, ¶ 3. Moreover, the letter was a codicil as a matter of law because it made a specific bequest of the Montana property and did not purport to bequeath the entirety of the estate. *See* Official Comments to § 72-2-527, MCA ("when the second will does not make a complete disposition of the testator's estate, the second will is more in the nature of a codicil to the first will"). The District Court was therefore correct when it concluded that the June 18, 1997 letter was a codicil. Furthermore, we see no evidence that the Estate had any less opportunity to argue this issue in the District Court than it has had on appeal. Accordingly, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART